I'd like to reserve three minutes for a moment. May it please the Court, Your Honors. Aaron Heiss on behalf of the appellant, Rhett Davis, in this matter. This is by plaintiff's definition a government-assisted illegal lockout case or an illegal eviction that was aided by my client, Chief Rhett Davis, when he responded in July of 2016 to civil standby. I don't feel the need to remind this Court of the qualified immunity standards. There's the first prong that there has to have been. But you do. You are. But I'm going to identify where I think the issues are because the district court identified two separate and distinct reasons why qualified immunity should be denied as to Rhett Davis. We think both of those reasons are error for very different and distinct reasons. There was one of those issues that was briefed at length and was the issue that was mutually understood to be the dispute in that case going forward. And then there was the other one that was manufactured at the time of that opinion being issued by the district court, having never been raised or briefed on any level up to that point. Can I try to unpack this case? It seems to me there are three constitutional claims being made. One is that your client violated the Fourth Amendment by entering the residence without a warrant and probable cause. Second, that he violated the Fourteenth Amendment by, in effect, evicting them from the apartment with no court order or process. And third, that he somehow, and I don't know whether this is a Fourth or Fourteenth Amendment claim, violated the Constitution by allowing the landlord or not interfering in the landlord's demolition of the property. Do you agree that those are the sort of three claims posed? I would agree that those three were addressed in the courts. Okay. In the district court's opinion, I would agree that those three were addressed. Okay. So let's assume they're before us. I know you contend that they weren't before the district court. Just number one, I would contend it was not before the district court. But if that claim were before the district court, isn't there rather clearly established law that a police officer cannot enter a home in the absence of a warrant or some exigency? I think in the general, if you were to define qualified immunity in this case, under that general, very high level of generality umbrella, sure, I would concede that. However, there is one distinct point that would probably, and again, this was never briefed because this part wasn't ever really there. And I'm not sure what the damages are from that. Sure. And that may be why it was never part of the case up to that point. But there would still be the very distinct issue of the dilapidated nature of the structure. But he didn't enter the structure because he was driving by and thought it was dilapidated. Sure. He entered the structure because the landlord called him up and told him to throw the people out. Sure. But if you have a Fourth Amendment violation there, you still have to have the objectively reasonable expectation, the objectively reasonable expectation. I agree that he has the subjective portion of that Fourth Amendment analysis. But the dilapidated nature of that structure, whether you could ever. So if you're living in a dilapidated structure, you have no Fourth Amendment expectation of privacy? No. And to be clear, I'm on the problem. No, that's correct. Or no, you don't have to clarify your answer. Do you agree with that? I'm sorry. Well, you said, yeah, maybe entering somebody's house violates the Fourth Amendment, but this was a dilapidated structure. Sure. The clarification needed would be that this structure and the record before the district court was that there could never be, whether it was dilapidated or not, there could never be a lawful residence of a structure of any kind in that place in that city lawfully. You could never lawfully occupy that structure was before the district court. So move on to the second. But it was given an address, that structure was, was it not? It was the something and a half address. At one time, it did. It did. There was somebody that occupied it years prior. And then zoning ordinances changed. The owner had it removed, signed an affidavit with the city that said, this is no longer a residence. We've having the meters removed. There's no electricity there. There's no water there. There's no. And Chief Davis knew all of that? You're saying that Chief Davis knew? No, I'm not. Oh, okay. I'm just trying to figure out why it isn't fair to say that Chief Davis was the but-for cause of Mr. Clark's eviction when Chief Davis ordered him to leave on threat of arrest. Chief Davis continued to threaten Clark with arrest over the following two months, and then Chief Davis was informed that the house was being torn down and refused to help. It seems like these facts are somewhat analogous to Harris and Howerton. Obviously, you would disagree both with the factual conclusion. Tell me why. On the factual side of it, an unfollowed through threat is not a seizure. And the timing is important. It may not be a seizure, but he did, in effect, evict them. He said, leave or I'll arrest you. But he didn't because he. Well, because they obeyed his order. I mean, do they have to get arrested for there to be an illegal eviction? He came and said, you've got to leave. They tried to show him a lease. He said, I don't want to see it. And then he said, if you don't leave, I'll arrest you. And relatively shortly, Clark leaves. So if we're talking about the 14th Amendment deprivation of property, the deprivation of the right to stay in your home, why isn't that sufficient to make that a constitutional violation? In this case, specifically factually, because that threat to trespass is that initial contact at the door. That happens. Immediately after that, plaintiff and the owner then negotiate between the two of them for him to stay. Well, what I have in this record is Clark saying he was told on multiple times by Davis that he had to leave the house or be arrested. Did I have the record wrong? You have that record correct, Your Honor. Okay. So if that's true, why isn't there at least a fact question about whether Davis evicted Mr. Clark? Because it's still a private eviction. Chief Davis isn't his landlord. The people evicting him are his landlord, and nothing from the threat of trespass in July to when he says he leaves in September is connected in any way between Chief Davis and the- But the cases seem to, at least a couple of cases, seem to differ with you on that. They say if there's enough police action beyond mere presence, the way I interpret it, then it's sufficient to constitute state action in these situations. Or I guess, you know, what's your best case to say otherwise? I mean, my best case, because we're here on qualified immunity, is that there is no case. But there are cases that say that one may not be evicted by the state from a home without process. Do you agree? Sure. And if you, again, if you're still at the high level of generality and you don't go down to the specific facts and circumstances of those cases, you could end up in a place where, okay, if there's any involvement by the police at all, then there's a fact question about whether or not they were a but-for approximate cause here. But where both plaintiffs says, I didn't listen to his order, I wasn't going to listen to his order. Is the but-for approximate cause stuff the stuff of qualified immunity, or is that a separate factual issue for trial? In other words, the question is, I suppose, under qualified immunity, whether your client objectively should have known that what he did violated the Constitution. Whether or not it actually caused the injury, I'm not sure, is in front of us on qualified immunity. I would argue that it is, Your Honor. What case do you cite for that? Under prong one of all of the. It has to be a constitutional violation. That's prong one. Right. What's your case authority? Emmons, the most recent qualified immunity case from the Supreme Court. You would still have to have a seizure by the government in order to have a violation so that you would meet prong one. And that hangs on. I guess I'm focusing on the eviction claim, which I don't view as a seizure claim, but a 14th Amendment due process claim. On the actual lack of process? That he went there with no legal authority and threw them out of the house. You would still have a causation piece there because you would have to have, for a violation to occur, even under that procedural due process portion, you would have to have Chief Davis intervening so that he had no access to the state's procedures on eviction, whatever rights and remedies he may have under that. And that, too, is absent. Let me just take one more run at this and see if you can respond for me. Because if we have to credit, and I think it's just a slightly different version of the question that Judge Hurwitz asked, if crediting Clark's testimony as true on that day, Chief Davis entered Mr. Clark's residence, ordered him to remove his belongings and leave, and threatened to arrest him if he did not do so, despite not having any court order or warrant, and despite knowing that Clark had a lease to rent the house, whether it was dilapidated or not, he had a lease to rent the house. That seems undisputed. And it seems to me that any reasonable officer would have known that these actions violated the Constitution. And we do not have to even reach the September 16 eviction. So I just want to know, what's your response to that? It really comes back to that causation piece. If you lock it in time, at the time that there is, if you credit his testimony with all of it, and then you stop the clock and you stop all the circumstances immediately after he says, you've got two hours to be gone, get out of here, and you say that he knew everything about this lease up front and all of those things, then I would agree with what you're saying. But if you then have to have, it has to have an impact. You don't have this freestanding constitutional injury. That's Kerry v. Pyphus. You have to have an injury. And here, the testimony, his continuing testimony about what goes on from that point is, I didn't care what he said. I wasn't leaving. I didn't leave. The unequivocal testimony from the landlord is, I never relied on Chief Davis. I knew he wouldn't help me anymore from that point forward. So my eviction notice, my writing a letter to the guy that was buying it and told him he could tear the whole thing down, was completely disconnected from Chief Davis, completely. But Clark was afraid to go back into the house because of what the chief had told him and had to remove his belongings out. Why isn't that enough of an action response? Because the injury being asserted here is, you dispossessed me of my right to the structure. And that didn't dispossess him of anything. There was never any enforcement action taken by Chief Davis. And the cases that I've seen. Sir, under your reading of this, if Mr. Clark had left immediately when the chief came and said, get your belongings and go or I'll arrest you, there would be a constitutional violation? We'd have a much closer call. We'd be much closer like Howerton or the city of Roseburg. TM, what I'm struggling with is I'm not sure that the eventual causation is part of the qualified immunity analysis. It may be a reason that you should prevail at trial or on some other motion for summary judgment, but I'm not sure it's part of a qualified immunity analysis here. It seems to be a disputed fact, but that's that's why I was asking. And I understand the inquiry, even in those repossession cases like Myers or Harris, you you actually have the police interfering and the person that whether they have a lawful right or not, leaving with the property at that time. And in all those cases, the officers still granted qualified immunity, which is what we're talking about here. If he had left, that's why I conceded as far as. Why does he need to have left? I mean, the standard is meaningfully interfered and he was dispossessed of his property. Why doesn't that meet the mark? He was dispossessed by his of his property by private actors, which doesn't implicate. Clark was based on Clark's. You're not the personal property. We're talking about the leasehold interest. Sure. Yeah. Even even then by private actors months later, not by anything that Chief Davis said or did in July. It is right to enjoy the property. I don't think that's been the asserted injury. The asserted injury is you dispossessed me of it. Well, we've let you I've let you go over by four minutes and 50 seconds. But I'll give you just a couple minutes to respond. Morning. May it please the court. My name's Ed Johnson. This is my co-counsel, Bill Nice. We represent Kerry Clark. He's the plaintiff. I believe I think the court has identified the central question. Well, it's not yet. So here's my central question. Do you agree that you sort of have the three claims that I described? I think we have those three claims. And I think there's also a Fourth Amendment claim for a law enforcement officer participating in an illegal event. Okay. That's the sold out. Whether that's a fourth or 14th Amendment claim, it's still the second one I described. Here's your claim that I have a problem with. The law enforcement officer does something you think is unconstitutional on July 11th. Three months later, the landlord bulldozes the house. The law enforcement officer is not there. He's not supervising the bulldozing. And you're making a claim against the law enforcement officer for the loss of the property that was in the house. Tell me what Supreme Court case or case of ours provides clearly established law. Your claim against him at that time is, well, Mr. Clark called him. It's not clear whether Mr. Clark called him before or after, but let's assume he called him before. You call a police officer and you say somebody's about to bulldoze my house and the police officer doesn't help. Tell me what Supreme Court case clearly establishes that that's a violation of the Constitution. So Saldal is the closest case. Well, but Saldal, the police officer, is standing by while this is occurring and preventing the tenant, if he is a tenant, from interfering with what's going on. Here the officer is in his office three months later. After he commits whatever unconstitutional acts you think were committed. I'm having trouble figuring out why he's at least not entitled to qualified immunity with respect to that claim. So it's a causation question and a damages question. It's a but for question, I suppose. It's not even clear that but for what he did that the landlord wouldn't have bulldozed the house. But that's not the issue. The issue is what did he do wrong with respect to the bulldozing of the house? Well, with respect to the bulldozing of the house, two things. Number one, he was called, Cary Clark called him about that. And that's exactly the question I've been trying to get you to answer, which is that he called him and he didn't respond. And he didn't respond. He said at that point he said it's a civil matter, which is what he should have said back on July 11th of 2016. Right. And so I'm with you on July 11th for purposes of this question. Let's assume he evaluated the Constitution on July 11th. In September. Tell me what case looking at it and reasonably objective police officer would have looked at and said, oh, my God, I got a phone call. I must spring to action to prevent a demolition. Is there a case that says that I'm not aware of a case that says that. But I would say that, you know, if if someone reports a crime, which is essentially my home is being torn down. Let's assume someone reports a crime. I call the police and say there's a crime occurring at my house and they don't show up. Is that a violation of the Constitution? I believe it is in this case because. What case says that? I don't know that there's any. I can't find a case in any context that says it. That's why I'm asking. Correct. And I and I can't I don't know of a case, Your Honor. But I do think given the factual background here and the causation issue of whether or not his July 11th order put into motion these actions by private actors, the fact that he you know, the causation, there's two parts of the causation analysis. One is, did his did he himself cause the constitutional deprivation? And our argument is that that happened on July 11th. He did that. And then the second part of it is, is there evidence in the record that because of that order and his subsequent orders and his failure to retract that order, was it reasonably foreseeable that these private actors, instead of going to eviction court, would bulldoze the house? I mean, see, that's my that's my that's my problem. It's sort of it's a very strange set of facts. I mean, admittedly, it's an extreme version of an eviction. I mean, normally what would happen is someone would be dispossessed without the structure being physically destroyed. And I for purposes of my question, I think you may be entitled to damages for the wrongful eviction. But you're making a separate claim here, which is that I kept property in the house for three months after the after the police officer did whatever he did. And then the landlord came by and bulldozed the house and destroyed my property. And I want to hold the police officer liable for that. And that's that's the one where I'm having trouble finding clearly established law that would suggest that he should have known that he he should have sprung to action and stopped the bulldozing. So I think we would have to prove at trial that the police officer's actions were linked to that September destruction of the house in order to get damages for that part of it. But, of course, our argument is that the constitutional deprivation and the damages started on July 11th. But going back to the bulldozing, I read this record. There's no argument that the that Chief Davis was complicit in the bulldozing other than failing to stop it. You know, that's correct. That he conspired with them or said, go ahead and bulldoze or whatever. No. Harvey Mafai admitted that he did it with the green light from Denise Shorb, the landlord. And we've gotten summary judgment against both of those parties. So that part of the case is there'll be a damages piece. So the chain of causation with respect to that whole series, it seems very attenuated. And it seems like the evidence suggests that it was Ms. Shorb and Mr. Moffitt. Is that who are the ones who carried out the destruction on their own without the chief's help? So just trying to figure out whether or not there's sufficient connection of the chief to the destruction. And I'm not sure I see that. But if I could ask you about the Fourth Amendment right to be free from seizure of his home. I think the district court cited Fournier versus Cuddleford to show that maybe there was a Fourth Amendment right to be free from seizure of his home and was clearly established under these circumstances. But it seems like Fournier held that the officer there had not committed a violation. So that's insufficient guidance from the Supreme Court on this issue. So other than Fournier, can you point us to any case that you believe establishes that right? So I believe that Saldal and Thomas versus Cohen from the Sixth Circuit both say that if a police officer participates in a landlord's illegal eviction and the tenant suffers a meaningful interference with their possessory interest, that's a Fourth Amendment violation. Fournier, I will say, the court said that that right was clearly established. But the facts of that case, that was another small town in Oregon up on Mount Hood. The Clackamas County Sheriff's deputies were called to a situation where the landlord had already thrown the tenant out of the house. Tenant leaves, calls the sheriff. When the sheriff gets up there, the landlord says, oh, actually, I'm living in this house. And the sheriff deputy said, okay, I don't know what's going on here, but I'm going to preserve the status quo. And somebody's going to have to get a civil court order. And in the meantime, I'm not doing anything. And the court found, the district court in the Ninth Circuit affirmed, found that the police officer had arrived at a situation not of his own making. And there was some lack of clarity around who had the right to be in this house up in Rhododendron, Oregon. But that's not here. The case here is that everyone knows that Kerry Clark is the tenant. He's in the house. And the police officer, this isn't really an enmeshment or entanglement case. This is a solo actor local police chief case. He comes into the house and issues this order. So, factually, it's very different than Fournier. When Justice White wrote the unanimous opinion in Saldal for the Supreme Court in 1992, he said, I don't think I'm opening up the floodgates for litigation here. And it turned out he was right. There aren't a lot of cases because every reasonable law enforcement officer knows you can't simply help a landlord do an end run around the well-established eviction process by waltzing into someone's house and ordering them to leave under threat of arrest. So you don't have a most analogous case? Or where are we to look for? So I think Saldal is analogous. And, in fact, there's two things about Saldal. One, the officers just stood by and gave the imprint of state action to this illegal eviction, but they didn't actually participate in the way that Chief Davis did. Secondly, even though that was also a fairly factually graphic case because this mobile home was pulled out of the park to the street, it was only there for five days before it was returned. And so I would say that the nature of the deprivation in this case has been more long-lasting and permanent than what the Saldals suffered. I think Saldal is directly on point. Any other questions? All right. Thank you very much. Thank you, Your Honor, for the additional time. Responding to Saldal, it could not be. Although it is a Supreme Court case, it could not be the kind of clearly established, squarely governing this case because they weren't even deciding whether or not the Fourth Amendment had been violated. They expressly stated that we're just talking about whether or not the Fourth Amendment applies here, and then expressly said, even then, numerous seizures of this type will survive constitutional scrutiny. As often would be the case, a showing of unreasonableness on these facts would be a laborious task indeed. But weren't they saying that's the issue for trial? They weren't saying we're just finding a Fourth Amendment violation, but we're sending it back to determine whether it's qualified immunity. Sure, and I'm not arguing that Saldal doesn't mean that Fourth Amendment applies. I'm saying that it can't be used in the qualified immunity context as clearly establishing that what happened here was a violation of the Fourth Amendment. Well, doesn't it clearly establish that the Fourth Amendment protects a tenant against police participation in an eviction that's not supported by process? Sure, and the argument is just that the amount of the participation needs to be what's squarely governed. Well, here the participation, other than your causation issue, what follows is greater than in Saldal. Saldal, the private actors are removing the tenant, and the police are sort of standing by and supporting them. Here the police officer goes in and says you have to leave. And no vacation occurs. Right, that's the causation issue. But I mean in terms of the participation, it's greater here, isn't it? Yeah, and the only other case I would point the court to then, if that's really where the inquiry becomes, is the more recent, it's an unpublished, it's an appendix case of Bergen v. Nixon, which is in the briefs where the allegation is still, there's still this difference, and the allegation is that there is some bias by the police officer, and so he actually issues a ticket over an easement dispute, and even then he's found to have qualified immunity.  Thank you. Thank you both for your oral argument presentations today. The case of Kerry Clark v. Rhett Davis is submitted.
judges: Murguia, Hurwitz, Gaitan